# In the United States Court of Federal Claims

No. 25-1414
Filed: March 23, 2026

|  |  |
|---|---|
| SABRINA DUNBAR-BROWN, | ) ) ) |
| *Plaintiff,* | ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) ) |
| *Defendant* | ) ) ) ) |

## OPINION AND ORDER

Ms. Dunbar-Brown is the owner and operator of a company that provides childcare during events. In early 2025, her company entered a subcontract to provide services during certain Army events. This relationship lasted just a few months. Ms. Dunbar-Brown now seeks contract damages from the United States because of the prime contractor's conduct.

But the United States can only be sued if it consents to being sued. In contract cases, there are two significant limitations on a plaintiff's ability to sue the United States. First, the United States' consent to suit is generally limited to those in contractual privity with the United States—prime contractors. This means that subcontractors generally may not bring contract claims. Second, before any contractor may bring a contract claim in this court, the contractor must first submit that same claim to the contracting officer before filing in this court. Because Ms. Dunbar-Brown fails both limitations, the court grants the United States' motion to dismiss for lack of subject-matter jurisdiction.

## I.    Background

In January 2020, the Army awarded a sixty-month Indefinite Delivery/Indefinite Quantity contract to TechTrans International ("TTI") to perform event planning services in support of the Army's Building Strong and Resilient Teams ("BSRT") program. ECF No. 13-2 at 59–60, 68. Under Contract No. W9124J-20-D-0004, TTI is required to obtain childcare at BSRT events in accordance with certain performance requirements. *Id.* at 86–87.

Five years after the award, TTI entered a subcontract with On-Site Childcare Solutions, LLC ("OSC") for the provision childcare services at BSRT events. ECF No. 1-2 at 6, 8.[1]  Ms. Dunbar-Brown is the owner of OSC.  On January 8, 2025, OSC agreed to TTI's "Childcare Support Standard Operating Procedure[s]."  *Id.* at 6.  The two parties then executed a formal Services Agreement on March 17, 2025.  *Id.* at 8.

This relationship was short-lived.  On June 9, 2025, a TTI representative informed Ms. Dunbar-Brown that OSC was disqualified from all future BRST events due to violations of TTI's standard operating procedures.  *Id.* at 12–14.  In response, Ms. Dunbar-Brown began appealing to various government officials for corrective action, including the Army Contracting Officer and various Department of Defense ("DoD") officials.  ECF No. 1 at 5; ECF No. 19-1 at 4. These attempts were unsuccessful.  ECF No. 19 at 2.  In response to a letter from Ms. Dunbar-Brown, TTI's President informed her on July 16, 2025, that OSC was "removed from the approved vendors list due to multiple documented complaints."  ECF No. 17-2 at 54.

On July 23, 2025, Ms. Dunbar Brown filed a protest at GAO on behalf of OSC, arguing that TTI wrongfully terminated OSC's subcontract.  ECF No. 1 at 5; ECF No 1-2 at 22.  The GAO determined that the dispute was a matter of contract administration between private parties and dismissed the protest for lack of subject-matter jurisdiction.  ECF No. 1-2 at 26–28.

One day after the GAO dismissal, Ms. Dunbar-Brown filed this action in her name.  ECF No. 1.  Though the complaint was initially framed as a bid protest, Ms. Dunbar-Brown has since clarified that she brings her case only under the Contract Disputes Act, 41 U.S.C. §§ 7101–7112 ("CDA").  *See* ECF No. 15-3 at 1; ECF No. 18 at 4, 7.  Specifically, she filed a "proposed limited amendment / clarification to verified complaint."  ECF No. 15-3.  Given the leniency with which the court considers Ms. Dunbar-Brown's claims, the court views this document as adding to, rather than replacing, the initial complaint.  In this amended complaint, she seeks "corrective, declaratory, and monetary relief as a result of the Army's administrative ratification of TTI's exclusion," including lost income, lost business opportunities, consequential damages, and emotional distress.  *Id*. at 1; ECF No. 1 at 6.  Because Ms. Dunbar-Brown has disclaimed seeking reinstatement, ECF No. 15-3 at 1, which was the only relief sought in her motion for a temporary restraining order, ECF No. 2, the court denies that motion as moot.

The Government has moved to dismiss for lack of subject-matter jurisdiction.  ECF No. 17.[2]

## II.      Standard of Review

"Subject matter jurisdiction is a threshold issue that must be determined at the outset of a case."  *King v. United States*, 81 Fed. Cl. 766, 768 (2008) (citing *Steel Co. v. Citizens for a*

---

[1] The documents in ECF No. 1-2 are the exhibits attached to the complaint.

[2] Much of the Government's motion focused on bid protest matters, e.g., standing to bring a bid protest.  Because Ms. Dunbar-Brown has disavowed bringing a bid protest, ECF No. 15-3, the court does not address those arguments.

*Better Env't*, 523 U.S. 83, 94–95 (1998)). When deciding a Rule 12(b)(1) motion to dismiss, the court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences in [the Plaintiff's] favor." *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000). And the plaintiff "bears the burden of establishing that the court has subject matter jurisdiction by a preponderance of the evidence." *Howard v. United States*, 74 Fed. Cl. 676, 678 (2006), *aff'd*, 230 F. App'x 975 (Fed. Cir. 2007) (per curiam) (citation omitted).

Complaints filed by pro se plaintiffs "must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted). But "the leniency afforded pro se litigants with respect to mere formalities does not relieve them of jurisdictional requirements." *Demes v. United States*, 52 Fed. Cl. 365, 368 (2002) (citing *Kelley v. Sec'y, U.S. Dept. of Lab.*, 812 F.2d 1378, 1380 (Fed. Cir. 1987)).

## III.    Discussion

The Tucker Act grants this court subject-matter jurisdiction over claims brought against the United States that are "founded either upon the Constitution, or any act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). But the Tucker Act does not itself provide a substantive cause of action; "a plaintiff must find elsewhere a money-mandating source upon which to base a suit." *Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004). Ms. Dunbar-Brown invokes the CDA as the money-mandating source of law allowing her to bring much of this action.

### A.    This Court Lacks Jurisdiction to Hear Tort Claims.

Insofar as Ms. Dunbar-Brown asserts tort claims, this court lacks subject-matter jurisdiction to hear them. Under the Tucker Act, this court's jurisdiction is limited to cases "not sounding in tort." 28 U.S.C. § 1491(a)(1). As a result, this court lacks jurisdiction over Ms. Dunbar-Brown's claim for emotional distress because it sounds in tort. *Pulnikova v. United States*, No. 22-1664 C, 2023 WL 4743021, at *5 (Fed. Cl. July 25, 2023), *aff'd*, No. 2023-2299, 2024 WL 3738447 (Fed. Cir. Aug. 9, 2024) (collecting cases). This court also lacks jurisdiction over her claim for mental anguish, which also sounds in tort. *Rogers v. United States*, 66 F. App'x 195, 198 (Fed. Cir. 2003) ("The Court of Federal Claims also cannot adjudicate Mr. Rogers' claim for restitution for mental anguish and punitive damages because the Tucker Act limits the court's jurisdiction to 'cases not sounding in tort.'") (quoting 28 U.S.C. § 1491(a)(1)). Finally, the court lacks jurisdiction over the complaint insofar as it seeks to recover for reputational harm, which too sounds in tort. *Otis v. United States*, 176 Fed. Cl. 1, 10 (2025). The court thus grants the motion to dismiss Ms. Dunbar-Brown's emotional distress, mental anguish, and reputational harm claims for lack of subject-matter jurisdiction.

### B.    This Court Lacks Jurisdiction to Hear the CDA Claims.

#### 1.    Ms. Dunbar-Brown is not in privity with the United States.

The Government moves to dismiss Ms. Dunbar-Brown's CDA claims for lack of privity. Although it is hard to understand Ms. Dunbar-Brown's view on privity, to the extent that she

3

argues that the CDA generally allows subcontractors to bring claims to this court, *e.g.*, ECF No. 18 at 3, 7, she is wrong.

The CDA allows a "contractor" to bring a claim to this court after a contracting officer's final decision on that claim. 41 U.S.C. § 7104(b)(1). And the CDA defines "contractor" to mean "a party to a Federal Government contract other than the Federal Government." *Id*. § 7101(7). As a result, "[t]he courts repeatedly have held that, as a general matter, subcontractors lack privity of contract with the federal government and thus cannot bring a claim under the CDA." *Montano Elec. Contractor v. United States*, 114 Fed. Cl. 675, 680 (2014) (citations omitted). This rule reflects a foundational principal of law that "a sovereign may not be sued unless it consents." *Flexfab, LLC v. United States*, 424 F.3d 1254, 1263 (Fed. Cir. 2005) (citing *United States v. Lee*, 106 U.S. 196, 207 (1882)). Because finding a subcontractor in privity with the government risks judicial expansion of Congress' waiver of sovereign immunity, the court strictly construes the CDA's privity requirement. *Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed. Cir. 1998); *Lockheed Martin Corp. v. United States*, 50 Fed. Cl. 550, 562 (2001) ("Finding subcontractors in contractual privity. . . would represent a dramatic extension of this waiver."), *aff'd*, 48 F. Appx. 752 (Fed. Cir. 2002); *see also Flexfab*, 424 F.3d at 1264 ("[T]he government does not lightly consent to suit.").

Ms. Dunbar-Brown contends that she has privity under an agency theory based mostly on the Army's control over events. ECF No. 1 at 1; ECF No. 18 at 7. To establish privity through an agency relationship, however, Ms. Dunbar-Brown must establish that the "prime contractor was (1) acting as a *purchasing* agent for the government, (2) the agency relationship between the government and the prime contractor was established by clear contractual consent, and (3) the contract stated that the government would be directly liable to the vendors for the purchase price." *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1551 (Fed. Cir. 1983) (citing *Kern–Limerick, Inc. v. Scurlock*, 347 U.S. 110, 112 n.2 (1954)). These "crucial factors" are necessary to establish privity. *Id*. And the fact that these factors are stated with an "and" means that Ms. Dunbar-Brown must establish all of them.

Ms. Dunbar-Brown appears to contend that the government's "substantial control" over her during the events OSC staffed shows that TTI functioned as a purchasing agent for the Army. *E.g.*, ECF No. 18 at 3. She also contends that the Army conducted background checks and performed various oversight functions at the BSRT events. ECF No. 1. at 1–2. She views the Army's involvement in OSC's performance as so pervasive that OSC was, "in effect, treated as a prime." *Id.* at 1. The Government disputes these contentions, asserting that TTI's contract only provides for TTI to submit background checks to the Army. ECF No. 20 at 5. It is unlikely that the alleged control could establish privity because "theories of direct control or direct dealings as a basis for privity fail because direct interaction between the government and a subcontractor do not, by themselves, constitute a contract." *Lockheed Martin,* 48 Fed. Appx. at 757 (citing *Seger v. United States*, 199 Ct. Cl. 766, 781–84 (1972); *Continental Ill. Nat. Bank & Tr. Co. of Chicago v. United States*, 112 Ct. Cl. 563, 564 (1949)). That said, the court cannot resolve the factual dispute over what the Army was or was not doing when resolving the motion to dismiss. But that does not mean that Ms. Dunbar-Brown prevails because even if the court assumes that she satisfies the first *Johnson Controls* factor, she must also satisfy the remaining two.

The remaining *Johnson Controls* factors require the court's review of TTI's contract with the Army. Ms. Dunbar-Brown does not assert that TTI's contract with the Army evidences a clear consent to an agency relationship between the Army and TTI. The court has reviewed the entire contract and not found anything supporting the existence of an agency relationship between TTI and the Army, much less "clear contractual consent" to such a relationship. *Johnson Controls, Inc.*, 713 F.2d at 1551.

Finally, TTI's contract with the Army does not provide that the Army would be directly liable to subcontractors at any level. To the contrary, under the contract, a "subcontractor" is "[o]ne that enters into a contract with a prime Contractor." ECF No. 17-2 at Appx 79. And that "[t]he Government does not have privity of contract with the sub-Contractor." *Id.* In plain terms, TTI's contract with the Army does not create privity of contract between TTI's subcontractors and the Government—it denies the creation of it.

Because Ms. Dunbar-Brown cannot establish the "crucial factors" necessary to establish privity of contract with the United States, this court lacks subject-matter jurisdiction over her CDA claims and must dismiss them.

2.    Ms. Dunbar-Brown Failed to Submit a Claim to the Contracting Officer.

Even if she could establish privity, the court would still dismiss the complaint because Ms. Dunbar-Brown did not submit her claims to the contracting officer before bringing this action. Before Ms. Dunbar-Brown may bring a CDA claim to this court, she must present that claim to the contracting officer for a final decision. 41 U.S.C. § 7103(a). This presentment requirement is a "prerequisite to suit in the Court of Federal Claims." *Arctic Slope Native Assn., Ltd. v. Sebelius*, 583 F.3d 785, 793 (Fed. Cir. 2009). And presentment is a jurisdictional requirement, meaning that this court lacks subject-matter jurisdiction to hear a claim that was not first presented to the contracting officer for a decision. *ECC Int'l Constructors, LLC v. Sec'y of Army*, 79 F.4th 1364, 1377 (Fed. Cir. 2023) (explaining that "the crux of [the CDA's] grant of jurisdiction is the claim"); *Tolliver Grp., Inc. v. United States*, 20 F.4th 771, 775–76 (Fed. Cir. 2021) ("Thus, obtaining a final decision on a claim is a jurisdictional prerequisite to adjudication of that claim in the Claims Court.") (citing 41 U.S.C. §§ 7104(b)(1), 7103(g)); *Raytheon Co. v. United States*, 747 F.3d 1341, 1354 (Fed. Cir. 2014) ("It is a bedrock principle of government contract law that contract claims, whether asserted by the contractor or the Government, must be the subject of a contracting officer's final decision.").

A "claim" is "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 33.201. To satisfy the CDA's presentment requirement, "[a] claim need not be submitted in any particular form or use any particular wording, but it must provide a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Tolliver Grp.*, 20 F.4th at 776 (quoting *K-Con Bldg. Sys., Inc.*, 778 F.3d 1000, 1005 (Fed. Cir. 2015)). "An action brought before the Court of Federal Claims under the [CDA] must be based on the same claim previously presented to and denied by the contracting officer." *Raytheon Co.*, 747 F.3d at 1354 (quoting *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003)). The court "treat[s] requests as involving separate claims if they *either* request

5

different remedies . . . *or* assert grounds that are materially different from each other factually or legally." *K-Con*, 778 F.3d at 1005 (emphasis in original).

Ms. Dunbar-Brown fails the presentment requirement because she did not submit the present claim she brings to this court to the contracting officer for a final decision as required by CDA. In a supplemental filing, Ms. Dunbar-Brown submitted her post-termination communications with various government officials as evidence of her "substantial compliance with the [CDA] . . . including proper notice and a written demand for relief." ECF No. 19 at 1. But the documents that she filed establish that she did not submit her claim to the contracting officer prior to filing this case:

- June 13, 2025 – Ms. Dunbar-Brown emailed various Army personnel asking for an investigation into TTI. ECF No. 19-1 at 4–5. Although it is unclear whether any of the recipients are contracting officers,[3] this email alleges various misconduct by TTI (not the Army) and requests an investigation into TTI. It also requests that the Army "[c]onsider reinstating *my company* for future Strong Bonds events." *Id*. at 5 (emphasis added).

- June 17, 2025 – Ms. Dunbar-Brown emailed the contracting officer and again raised concerns about OSC's disqualification from future events and "TTI's subcontracting process." *Id*. at 8. And she repeated her request for "a thorough review of the circumstances surrounding *my company's* disqualification and *TTI's subcontractor management* practices to ensure compliance with FAR regulations and federal procurement laws." *Id*. (emphasis added).

- June 18, 2025 – Ms. Dunbar-Brown emailed the contracting officer again to emphasize that her *company*'s status as a woman-owned small, disadvantaged business raised additional concerns under FAR 52.219-8 and 52.219-9. *Id*. at 9. The contracting officer responded acknowledging the receipt of the email and informing Ms. Dunbar-Brown that a review was underway. *Id*.

- June 20, 2025 (8:08 a.m.) – Ms. Dunbar-Brown emailed the contracting officer again to express concern that it did not appear that the Army had taken any steps to review her allegations in the forty-eight hours since she filed it. *Id*. at 10. Here, too, Ms. Dunbar-Brown asserted that she complained about "the sudden and baseless removal of *my company*[.]" *Id*. (emphasis added)

- June 20, 2025 (11:00 p.m.) – Ms. Dunbar-Brown again emailed the contracting officer to refute TTI's claim that it did not have a contract with her. *Id*. at 11.

---

[3] There is a response to this email from one recipient that states: "We've received your email dated 13 June 2025. We are not the appropriate recipient. We recommend you direct this correspondence to the contracting activity/contracting officer that works with TTI." ECF No. 19-1 at 6. It appears that within a few days at least one of the recipients of Ms. Dunbar-Brown's email forwarded it to the appropriate contracting officer and contracting officer's representative for review. *Id*. at 7.

She asserted that her company had a contract with TTI and appears to have attached a copy of the signed subcontract with TTI. *Id*. at 11, 12. And she complained about certain TTI officials' "coordinated effort to deny *my company* the rights and protections that come with subcontract status, while still using our services." *Id*. (emphasis added).

- June 23, 2025 – After the contracting officer apparently stated that Ms. Dunbar-Brown's complaint appeared to be a dispute between OSC and TTI, Ms. Dunbar-Brown asserted that her complaint alleged "serious Federal Acquisition Regulation (FAR) violations, misconduct, and potentially fraudulent behavior committed by Prime Contractor TechTrans International (TTI) while administering a government-funded contract." *Id*. at 14. She also stated that, "[i]f your position is that your office will not investigate or elevate a matter involving potential fraud, discrimination, and abuse of a federal subcontractor, I request that you put that refusal in writing, with justification." *Id*.

- June 24, 2025 – Ms. Dunbar-Brown informed the contracting officer that she had submitted complaints to DOD's Inspector General and her congressional representative's office, and that if the contracting officer did not respond to her complaints about TTI's treatment of OSC, she would add the contracting officer's "inaction" to those complaints. *Id*. at 15.

- July 11, 2025 – Ms. Dunbar-Brown wrote to the DOD Inspector General complaining that it had closed her whistleblower complaint seeking an answer as to "why *On-Site Childcare Solutions LLC* has been excluded from future work despite a flawless record." *Id*. at 17 (emphasis added). The closest she came to asserting a personal claim is when she sought the reopening of her whistleblower complaint because "I was an individual contractor and am legally protected." *Id*. And she sought sole-source contracts to provide services. *Id*.

- July 13, 2025 – Ms. Dunbar-Brown emailed the contracting officer to propose "direct contracting with *On-Site Childcare Solutions LLC*." *Id*. at 18 (emphasis added). She proposed terms for such direct contracts and believed those terms would "allow *my company* to immediately fill childcare service needs[.]" *Id*. at 19 (emphasis added).

- August 4, 2025 – Ms. Dunbar-Brown emailed the contracting officer to state that, although she was pursuing a claim against TTI, she requested that the Army "immediately restore *my company*'s eligibility to receive BSRT events." *Id*. at 20 (emphasis added).

As these communications demonstrate, each of Ms. Dunbar-Brown's submissions to the contracting officer concerns TTI's administration of *OSC*'s subcontract and seeks reinstatement of that subcontract or the issuance of a prime contract to *OSC*. Here, Ms. Dunbar-Brown asserts that she is *personally* entitled to monetary damages pursuant to a breach of contract that are independent of OSC. That relief and legal theory are materially different than anything she put before the contracting officer for a final decision before bringing this action, meaning that this

court lacks jurisdiction over this claim. *K-Con*, 778 F.3d at 1005; *Raytheon Co.*, 747 F.3d at 1354.

Because Ms. Dunbar-Brown failed to present her claim to the contracting officer before filing this action, the court lacks subject-matter jurisdiction to hear these claims.

**IV.    Conclusion**

For the foregoing reasons, the court:

1. Grants the Government's motion to dismiss for lack of subject-matter jurisdiction, ECF No. 17;

2. Denies-as-Moot Plaintiff's motion for a temporary restraining order, ECF No. 2; and

3. Grants the Plaintiff's motion for leave to file supplemental information, ECF No. 19.

The Clerk's Office is directed to enter judgment accordingly.

It is so ORDERED.

<u>s/ Edward H. Meyers</u>
Edward H. Meyers
Judge

8